Opinion Issued June 5, 2003




 










In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00416-CR

____________


JOSEPH KENTON MCGOWEN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court 

Harris County, Texas

Trial Court Cause No. 647,853






MEMORANDUM OPINION

 A jury found appellant, Joseph Kenton McGowen, guilty of murder and
assessed punishment at 20 years' confinement. Appellant presents 16 issues that raise
federal and state constitutional complaints primarily directed at the exclusion or
admission of evidence. We reach the merits of only the following issues: (1) the
exclusion of evidence of Jason Aguillard's involvement in criminal activity; (2) the
admission of certain recorded statements made during a 9-1-1 call by the victim,
Susan White, concerning appellant's having threatened and sexually harassed her; (3)
the exclusion of evidence that White had occasionally carried a weapon; (4) the
exclusion of evidence that White had recently stayed in a psychiatric hospital; (5) the
exclusion of evidence of White's reputation for untruthfulness; and (6) appellant's
complaint that the cumulative effect of the trial court's errors deprived him of his
constitutional rights. We affirm.

Facts and Procedural History On August 25, 1992, appellant, a Harris County Deputy Sheriff, shot and killed
White in her home while appellant was executing a warrant for her arrest on a felony
charge of retaliation. (1) Appellant arrived at White's house around 12:30 a.m. and was
accompanied by Deputies Malloy and Morong. The deputies first knocked on
White's door and announced that they were from the Harris County Sheriff's
Department, but White refused to open the door when she recognized appellant's
voice. She asked the deputies for identification and told them that she would open
the door only after appellant had left her property; however, appellant did not leave. 
White called 9-1-1. 

 Appellant then contacted his supervisor by radio and obtained permission to
break down the door. The deputies ran to the rear door of the house, and Deputy
Malloy kicked the door open, triggering the burglar alarm. Appellant first entered
White's house with his gun drawn, tailed by Deputies Malloy and Morong, and,
within seconds, came to White's bedroom. Appellant stood inside the doorway of
White's bedroom and said three times, "Put the gun down." He then immediately
fired three shots. The first shot grazed White's face and traveled through the side of
her nose. The second shot entered her chest. Third shot traveled through her right
arm and entered the right side of her chest. After firing the shots, appellant told
Deputy Malloy, "You heard me tell her to put the gun down." None of the other
deputies saw White prior to the shooting. The deputies entered the bedroom and saw
White's body on the bed. Deputy Morong retrieved a gun on the bed next to White's
body. Deputies Malloy and Morong then handcuffed White's son, Jason Aguillard,
who was upstairs on the telephone calling a 9-1-1 operator. White later died from the
gunshot wounds. 

 Testimony at trial revealed that appellant had actively sought the arrest warrant
against White and had manufactured many of the facts supporting probable cause in
order to obtain the warrant. Appellant had previously arrested Aguillard after
convincing Aguillard's friend, Michael Schaffer, to obtain confidential information
on Aguillard and to set up Aguillard for helping to facilitate the sale of a stolen gun
between Shaffer and another minor. After this arrest, White made several complaints
to appellant's supervisor, claiming that appellant was continually harassing both her
and her son and had arrested Aguillard only because she had spurned appellant's
sexual advances. White filed no formal complaints of sexual harassment against
appellant. 

 After he was arrested, Aguillard told White his suspicion that Schaffer had set
him up, and White made a phone call to Schaffer's mother, telling her, "Informants
don't live long in Houston." White also left a message with Schaffer's aunt, stating
the same thing. Schaffer told appellant about the telephone conversation between
White and Shaffer's mother, but maintained that neither he nor his family felt that
White's comment was a direct threat. 

 Appellant then contacted the Harris County District Attorney's Intake Division
and gave false information about White to obtain an arrest warrant for retaliation
against Shaffer. Appellant told the prosecutor that Aguillard was the head of a gang
that was building and selling automatic weapons. Appellant also stated that White
had called Schaffer's mother and had told her that White was going to kill Schaffer
because Schaffer had had White's son arrested and that Schaffer would be dead
before the day was over. When the prosecutor asked appellant if White should be
taken seriously, appellant falsely responded that there had been prior reports of
gunfire at White's house and that deputies had once taken a gun away from White at
her house. Before the prosecutor would file charges against White, the prosecutor 
told appellant that he must get confirmation of these threats from Schaffer's mother. 
 After appellant had left several messages with Schaffer's mother, Schaffer's
mother contacted appellant and confirmed that White had told her that "Informants
don't live long in Houston." Appellant went back to the District Attorney's Intake
Division, talked to a different prosecutor, and again attempted to obtain a warrant
against White. Appellant told the prosecutor that White had threatened Schaffer, that
White knew that Schaffer was the informant, and that another unknown individual
had threatened Schaffer with a gun. (2) Appellant attempted to convince the prosecutor
that all of these events were related. Appellant also stated that White had threatened
retaliation in an attempt to protect Aguillard, who had purchased a fully-automatic
Uzi. Appellant stated several times that he personally wanted to execute the warrant
for White's arrest. The prosecutor who approved the warrant testified that he would
not have prepared the warrant had he known that appellant had manufactured these
facts. Standard of Review

 A trial judge has broad discretion in admitting or excluding evidence. Mozon
v. State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). We will not reverse a trial
court's ruling admitting or excluding evidence unless that ruling "falls outside the
zone of reasonable disagreement." Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim.
App. 2001). Error in the admission of exclusion of evidence may sometimes deprive
a party of his or her constitutional rights. See Potier v. State, 68 S.W.3d 657, 665-66
(Tex. Crim. App. 2002); Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim. App.
2001). 

State Constitutional Claims

 We overrule appellant's second, fourth, sixth, eighth, tenth, twelfth, fourteenth,
and sixteenth issues involving his state constitutional claims because appellant did
not analyze the grounds separately or argue that the state constitution offers him more
protection than the federal constitution. See Brown v. State, 943 S.W.2d 35, 36 n.3
(Tex. Crim. App. 1997).


Aguillard's Criminal Activity

 In his first issue, appellant contends that the trial court erred by excluding
evidence of Aguillard's involvement in "weapons, drugs, and gangs," depriving
appellant of his right to due process under the Fifth, Sixth, and Fourteenth
Amendments to the U.S. Constitution. See U.S. Const. amends. V, VI, XIV. 
Appellant argues that this evidence was crucial to rebut the State's theory that
appellant had lied to obtain the arrest warrant against White and to show that
appellant was acting in good faith upon information that he had received from his
supervisors before obtaining the warrant. 

 Appellant complains that he was not allowed to question Captain Coons,
Deputy Gwosez, and Aguillard about Aguillard's alleged involvement in criminal
activity. Each time that appellant attempted to elicit information from these witnesses
about Aguillard's alleged criminal activities, the trial court sustained the State's
relevancy objection. Appellant attempted to elicit information that (1) Aguillard was
friends with a gang member, (2) Captain Coons believed that Aguillard was involved
in a shooting and was in a gang, (3) Aguillard was at a party at which four guns were
found, and (4) Deputy Gwosez believed that Aguillard was involved in a burglary
ring.


 Appellant has failed to demonstrate that this evidence was relevant to rebut the
State's theory that he had lied to obtain the arrest warrant against White. During his
first attempt to obtain a warrant for White's arrest, appellant told the prosecutor at the
Intake Division that Aguillard was the head of a gang that was building and selling
automatic weapons and that there had been prior reports of gunfire at White's house. 
During his second, successful attempt to obtain the warrant, appellant told the
prosecutor that White had threatened retaliation in an attempt to protect Aguillard,
who had purchased a fully-automatic Uzi. None of the evidence that appellant
attempted to elicit from Captain Coons, Deputy Gwosez, or Aguillard had the effect
of rebutting the State's theory that appellant had lied to obtain the warrant because
none of the evidence supported any of the facts that appellant had manufactured to
obtain the warrant. 

 Further, evidence of Aguillard's involvement in "weapons, drugs, and gangs"
was also irrelevant to show that appellant had probable cause to obtain an arrest
warrant for a retaliation charge against White: this evidence was irrelevant to any of
the elements of the offense of retaliation. See Tex. Pen. Code Ann. § 36.06 (Vernon
2003); Green v. State, 615 S.W.2d 700, 706 (Tex. Crim. App. 1980) (holding that
supporting affidavit must provide adequate information to enable judicial officer
issuing search or arrest warrant to assess independently probable cause for offense). 


 We hold that the trial court did not abuse its discretion in excluding the
evidence, and, therefore, that the exclusion of that evidence did not violate appellant's
constitutional rights.

 We overrule appellant's first issue.

Audiotape of 9-1-1 Call

 In his third issue, appellant contends that the trial court erred by admitting
certain recorded statements that White had made during her 9-1-1 call. Appellant
claims that these statements were irrelevant and unduly prejudicial, contained
hearsay, and deprived him of his right to confrontation under the Sixth and
Fourteenth Amendments to the U.S. Constitution. Appellant did not object to the
admission of the 9-1-1 audiotape as a whole, but specifically objected to certain
statements by White that appellant had sexually harassed and threatened her. 

 On the night of the attempted arrest, White made a 9-1-1 call while the deputies
were outside of her house attempting to persuade her to open the door so that they
could arrest her. The audiotape of this 9-1-1 call, which audiotape was admitted into
evidence, contained White's description of the events leading up to the deputies'
entry into White's house. During the conversation with the 9-1-1 operator, White
stated that (1) she had filed several complaints against appellant for sexual
harassment, (2) she had been threatened by appellant, and (3) appellant had made
sexual advances towards her.

 The State contends that these statements were properly admitted because they
fall within the excited-utterance exception to the hearsay rule. An excited utterance
is "a statement relating to a startling event or condition made while the declarant was
under the stress of excitement caused by the event or condition." Tex. R. Evid.
803(2). The test for whether a statement is an excited utterance is "whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the event." 
McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992). Unlike statements
falling under the present-sense-impression exception, excited utterances need only
"relate" to the startling event or condition, thus affording a broader scope of subject-matter coverage. See Tex. R. Evid. 803(1); Id. 803(2). 

 Here, appellant disputes the necessary relationship between the statements and
the startling event, claiming that the statements did not relate to the startling event, 
but instead referred to alleged incidents of sexual harassment remote in time from the
startling event. In these statements, White identified appellant to the 9-1-1 operator
as a police officer who had sexually harassed and threatened her. Because appellant
was at the scene and was one of the deputies attempting to arrest White at the time
that she made the statements, her statements directly concerned the circumstances
surrounding the startling event of the attempted arrest. Although White's statements
related to events that had allegedly occurred weeks or months before the startling
event, White made these statements while in a condition of excitement. The only
requirement concerning time with respect to admission of excited utterances is the
necessity that the statements be made while in a state of excitement caused by the
startling event. See Tex. R. Evid. 803(2).

 Moreover, White made the statements in an attempt to identify and explain her
fear of appellant to the 9-1-1 operator so that the operator would send another officer
to her home. During the call, White told the operator that there were three persons
at her door who claimed to be officers. White identified appellant as an officer, but
told the operator that she felt threatened by him. Thus, it is apparent that White made
these statements to have the operator dispatch a neutral officer to her home to help
her immediately. Thus, the statements made by White to the 9-1-1 operator were
excited utterances, excepted from the hearsay rule, and, therefore, that the admission
of these statements did not violate appellant's constitutional rights. See Idaho v.
Wright, 497 U.S. 807, 815, 110 S. Ct. 3139, 3147 (1990) (holding that statement that
are "firmly rooted" exceptions to hearsay rule are per se reliable under Confrontation
Clause).

 Appellant also claims that admission of White's statements unfairly prejudiced
him under Texas Evidence Rule 403. See Tex. R. Evid. 403 (stating that trial court
may exclude relevant evidence if danger of unfair prejudice of evidence outweighs
its probative value). The State presented testimony at trial that White had made
allegations of sexual harassment against appellant to his supervisor and that none of
the deputies believed that White's allegations were true. Thus, other evidence was
presented at trial showing that White had made sexual-harassment complaints against
appellant. Further, the statements do not display the kind of "inflammatory content
that would be calculated to cause the jurors to act on emotion rather than on the
evidence." Munoz v. State, 932 S.W.2d 242, 244 (Tex. App.--Texarkana 1996, no
pet.). 

 We hold that the trial court did not abuse its discretion by admitting White's
statements, and, thus, that the admission of these statements did not violate
appellant's constitutional rights.

 We overrule appellant's third issue.

Evidence That White Carried a Weapon 

 In his fifth issue, appellant contends that the trial court erred by excluding
evidence that White had occasionally carried a weapon, depriving him of his right to
due process under the Fifth, Sixth, and Fourteenth Amendments to the U.S.
Constitution. See U.S. Const. amends. V, VI, XIV. Appellant claims that this
evidence was relevant to show that (1) appellant's fear of danger was reasonable and
(2) White was the first aggressor.


 Appellant presented evidence that White owned a gun and had a gun in her
possession at the time that she was shot. Appellant also presented evidence that, on
one occasion, White had placed a 9-1-1 call, claiming that she had kicked one of
Aguillard's friends out of her house and that she was afraid that he would come back
to the house. When Deputy Smith responded to this earlier call, White had met him
at the doorway of her house with a gun. Appellant then attempted to offer testimony
by Deputy Smith that, on another occasion, Deputy Smith had responded to a call at
White's house and had found her in her yard with a gun. The State objected that this
testimony was irrelevant, and appellant explained that he wished to offer the
testimony to show that appellant and Deputy Smith had seen White with a gun on
another occasion. The State objected that Deputy Smith should not testify about what
appellant may or may not have seen on this earlier occasion. The trial court
disallowed the testimony. 

 Appellant first argues that Deputy Smith's testimony was relevant evidence of
appellant's state of mind to show that his fear of danger was reasonable. Appellant
did not present any evidence that he was aware of any of the instances in which White
had been seen with a gun so that one could determine whether appellant's fear was
reasonable. See Mozon v. State, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999)
(stating that, if defendant's claim rests on perceived danger, defendant may present
evidence of victim's violent character only if defendant shows that he was aware of
this evidence). 

 Appellant next argues that Deputy Smith's testimony was relevant to show that
White was the first aggressor. See Torres, 71 S.W.3d at 761 (stating that, when
defendant claims that victim was first aggressor, prior specific acts of violence
relevant to ultimate confrontation may be offered to show victim's state of mind). 
Here, appellant attempted to offer Deputy Smith's testimony that, after responding
to a call at White's house, he had found her in her yard with a gun. Appellant's
proffer of Deputy Smith's proposed testimony did not indicate that White acted in a
threatening or violent manner towards Deputy Smith. Because we cannot determine
from the context of the record whether White had acted in a violent manner towards
Deputy Smith during this earlier incident, we hold that the trial court did not abuse
its discretion by excluding the evidence. See Mozon, 991 S.W.2d at 846. Therefore,
we also hold that the exclusion of this evidence did not violate appellant's due-process rights. 

 We overrule appellant's fifth issue.White's Addiction to Controlled Substances and Her Psychiatric Problems

 In his seventh and ninth issues, appellant contends that the trial court erred by
excluding evidence that White was addicted to controlled substances and had recently
stayed in a psychiatric hospital, violating his right to due process under the Fifth,
Sixth, and Fourteenth Amendments to the U.S. Constitution and his right of
confrontation under the Sixth and Fourteenth Amendments of the U.S. Constitution. 
See U.S. Const. amends. VI, XIV. Appellant argues that this evidence was
admissible to explain White's "irrational" behavior on the night of the shooting and
to show that appellant's fear of danger was reasonable. 

 Appellant first complains that he was unable to present Aguillard's testimony
regarding the medications that White had taken on the night of the incident. At trial,
Dr. Wolfe, the medical examiner who examined White, testified that, at the time that
White was shot, White had varying quantities of several prescription drugs in her
body. When questioned about what types of prescription medications that White was
taking around the time she was shot, Aguillard testified that White sometimes took
Lithium. He did not know what other drugs White had been taking. The trial court
later sustained the State's objection to any full questioning about what medications
White had taken on the night that she was shot. During a bill of exception, appellant
questioned Aguillard about White's psychiatric hospitalization, but did not question
him further about the medications that White was taking. Because appellant did not
develop what testimony, if any, Aguillard would have given about what medications
White had taken on the night that she was shot, appellant has failed to preserve any
error regarding exclusion of testimony about medications that White may have taken. 
See Tex. R. Evid. 103(a)(2); Id. 33.2. 

 Next, appellant claims that he was unable to present testimony from Virginia
Schmeler, Captain Coons, and Aguillard that White had been hospitalized for
psychiatric problems. First, appellant complains that he was not allowed to present
testimony by Captain Coons that Aguillard had told Captain Coons that White had
been in a psychiatric hospital. Appellant made a bill of exception showing that
Captain Coons would have testified that, on one occasion when he responded to a call
at White's home, Aguillard told him that White was in a psychiatric hospital. 
However, appellant did not question Captain Coons about White's prior psychiatric
hospitalization at any time during Captain Coons's trial testimony. A bill of
exception exists to make the record show something that would not otherwise appear
in the record and is thus ineffective as a belated offer of evidence. See Tex. R. App.
P. 33.2. Thus, no error was preserved for our review. See Currie v. State, 692
S.W.2d 95, 97 (Tex. Crim. App. 1985). Moreover, any testimony of Captain Coons
as to what Aguillard had told Captain Coons was clearly inadmissible hearsay and,
had appellant elicited it at trial, could have been excluded upon objection. 

 Appellant also claims that he was not allowed to present testimony by Virginia
Schmeler, White's friend, that White had been hospitalized for psychiatric treatment. 
On direct examination, Schmeler was questioned about her prior testimony that she
knew something about White that made her feel like "injustice had been done." 
Schmeler responded that she knew that White "had been treated for mental
problems." The trial court then sustained the State's objection, although the grounds
for the ruling are not apparent from the record, without striking Schlemer's testimony
up to that point. 

 Appellant also complains that he was not allowed to present Aguillard's
testimony that White had undergone psychiatric hospitalization. On cross-examination, Aguillard was questioned about White's prior stay in a psychiatric
hospital, but the trial court sustained the State's relevancy objection. Appellant later
made a bill of exception in which Aguillard testified that White had been hospitalized
for psychiatric problems. In this bill of exception, Aguillard testified that White had
been treated at a psychiatric hospital, but that he did not know what type of
psychiatric problems White had experienced. The trial court then sustained the
State's relevancy objection.

 Appellant claimed that the testimony of Schmeler and Aguillard was relevant
for two purposes: (1) to explain White's "irrational" behavior on the night of the
shooting and (2) to show that appellant's fear of danger was reasonable. However,
the excluded testimony did not show what type of psychiatric problems White had
experienced or whether she displayed signs of psychiatric illness on the night of the
shooting. Further, the excluded testimony did not show that appellant knew that
White had been treated for psychiatric problems to show the reasonableness of his
fear of danger on the night of the shooting. 

 Appellant also claims that he should have been permitted to impeach White
with her recent psychiatric hospitalization under Texas Rule of Evidence 806. See
Tex. R. Evid. 806. Rule 806 provides that when a hearsay statement has been
admitted into evidence, the credibility of the declarant may be attacked by any
evidence that would be admissible to attack the credibility of the declarant if the
declarant had testified as a witness. Id. 

 "Cross-examination or impeachment of a testifying State's witness to show that
the witness has suffered a recent mental illness of disturbance is proper, provided that
such mental illness or disturbance is such that it might tend to reflect upon the
witness's credibility." Virts v. State, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987)
(emphasis added). The trial court would not have abused its discretion if it concluded
that the proffered testimony did not show that White suffered from a type of mental
illness that reflected upon her credibility. Aguillard testified in the bill of exception
that White had recently been hospitalized because of psychiatric problems, but he did
not know what kind of psychiatric problems White had. Appellant attempted to
question Schmeler about White's psychiatric hospitalization, but did not make a bill
of exception showing that Schmeler knew what psychiatric problems White had
experienced. Appellant did not offer any other evidence of White's mental-illness
history or evidence that her alleged psychological problems affected her credibility. 
Therefore, we cannot say that the trial court erred in concluding that the witnesses'
testimony was inadmissible under Rule 806. 

 We hold that the trial court did not abuse its discretion by excluding this
evidence, and, thus, that appellant's constitutional rights were not violated. See
Mozon, 991 S.W.2d at 846. 

 We overrule appellant's seventh and ninth issues.

White's Reputation for Untruthfulness

 In his eleventh issue, appellant contends that the trial court erred by excluding
Schmeler's opinion testimony about White's reputation for untruthfulness, depriving
him of his right of confrontation under the Sixth and Fourteenth Amendments to the
U.S. Constitution. See U.S. Const. amends. VI, XIV. Appellant argues that, when
the trial court allowed the jury to listen to the audiotape of White's 9-1-1 call, White
effectively became a witness and that her credibility was then subject to
impeachment.

 Appellant attempted to offer Schmeler's testimony that White had a reputation
for being a liar, for drinking excessively, and for being unstable. After the State
objected, appellant argued that the State had already "opened the door" to Schmeler's
testifying about White's character. The trial court sustained the objection, without
stating any grounds. 

 Because Rule 806 allows appellant to attack White's credibility by any
evidence that would be admissible to attack her credibility if she had testified as a
witness, appellant was entitled to offer evidence of at least White's reputation for
untruthfulness. See Tex. R. Evid. 806. Therefore, the trial court erred by excluding 
Schmeler's opinion testimony, and that error deprived appellant of his constitutional
right of confrontation. 

 Having determined that the trial court erred, we must now determine beyond
a reasonable doubt whether the error was harmless or whether the error contributed
to appellant's conviction or punishment. See Tex. R. App. P. 44.2(a). Thus, we must
assess whether "there was a reasonable possibility that the error, either alone or in
context, moved the jury from a state of nonpersuasion to one of persuasion." 
Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). In performing this
task, we gauge the error's potential impact in light of the other evidence appearing
in the record. McCarthy v. State, 65 S.W.3d 47, 52 (Tex. Crim. App. 2001). 

 The State's two theories about appellant's motive for lying to obtain the
warrant against White in order to shoot White were that she spurned his sexual
advances and made repeated, false complaints of harassment to appellant's
supervisors. However, the State presented evidence that none of the deputies,
including appellant's supervisor, believed that White's allegations against appellant
were true. Therefore, evidence was presented at trial that reflected on White's lack
of credibility with respect to her sexual-harassment allegations.

 The issue at trial was not whether White's allegations against appellant were
true or false, however. The record shows that, whatever his motive, appellant
manufactured the facts that were pertinent to obtaining the warrant to arrest White for
retaliation. Without a warrant or probable cause, appellant did not have the legal
right to enter White's house. Appellant shot White while executing an unlawful
arrest, after having lied in order to obtain the arrest warrant and to gain access to
White's house. Ultimately, error from the exclusion of Schmeler's reputation
testimony would have been harmful only if Schmeler's testimony had the effect of
rebutting the State's evidence that appellant had lied to obtain the warrant. 

 Notwithstanding White's credibility and regardless of whether she had lied
about appellant's having sexually harassed her, the overwhelming evidence showed
that appellant knowingly lied in order to obtain an arrest warrant to enter White's
house and that he shot White while executing this unlawful arrest. We hold beyond
a reasonable doubt that error from exclusion of Schmeler's testimony did not
contribute to the conviction or punishment. See Tex. R. App. P. 44.2(a).

 We overrule appellant's eleventh issue.

Mistrial

 In his thirteenth issue, appellant contends that the trial court erred by denying
his request for a mistrial after the trial court allegedly allowed the State to present
evidence of appellant's post-arrest, pre-Miranda silence in violation of the Fifth and
Fourteenth Amendments to the U.S. Constitution. See U.S. Const. amends. V, XIV. 
 After the shooting, appellant's supervisor ordered him to get inside a patrol car
and to start taking notes so that he could write a statement. Deputy Ruggerio testified
that, when he asked appellant after the shooting why he had not starting writing a
report, appellant answered that he was "advised by [his] attorney to wait until he
arrived." Appellant objected to the relevancy of Deputy Ruggerio's testimony, and
the trial court sustained this objection. The trial court also granted appellant's request
for a jury instruction to disregard, but denied his request for a mistrial. Appellant
now complains that this denial was error because it violated appellant's privilege
against self-incrimination.

 Because appellant's only objection at trial was on the grounds of relevancy,
appellant has not preserved any error. See Ibarra v. State, 11 S.W.3d 189, 197 (Tex.
Crim. App. 1999) (holding that, because appellant's trial objection did not comport
with his objection on appeal, appellant failed to preserve error).

 We overrule appellant's thirteenth issue.

Right to Due Process and Fair Trial

 In his fifteenth issue, appellant contends that the cumulative effect of the trial
court's errors deprived him of his rights of due process and a fair trial under the Fifth,
Sixth, and Fourteenth Amendments to the U.S. Constitution. See U.S. Const.
amends. V, VI, XIV. Although appellant asks us to look at cumulative error,
appellant specifically complains of two instances of error that occurred when (1) two
witnesses referred to the first trial of appellant's case and (2) the State made an
improper comment during the final argument of the punishment phase that appellant
would be treated more leniently in prison because he was a police officer. 

 Appellant first complains that two witnesses mentioned at trial that he had
previously been tried for White's murder. First, Deputy Kelly, when asked during
trial when he had first been officially interviewed about White's death, responded that
he had been interviewed "just before the [first] trial." Second, during the punishment
phase, Deputy Hall testified that he had ended his friendship with appellant after "the
first trial." In both instances, the trial court instructed the jury to disregard the
comments relating to the prior trial. Because the trial court instructed the jury to
disregard, the error was cured in both instances. See Rougeau v. State, 738 S.W.2d
651, 667 (Tex. Crim. App. 1987), overruled on other grounds, Harris v. State, 784
S.W.2d 5 (Tex. Crim. App. 1989). 

 Appellant next complains that the State made an improper comment during the
final argument of the punishment phase that appellant would be treated more leniently
in prison because he was a police officer. During voir dire, a panel member from the
State Board of Pardons and Paroles answered affirmatively when the State questioned
him about whether police officers who go to prison would be "put some place they're
safe." During final argument of the punishment phase, the State referred to this panel
member's response:

 The State: The fellow from Pardons and Paroles who
was on your panel on the 18th said no
problem. 


 Appellant's counsel: Excuse me. No problem. Objection outside
the record.


 Trial court: Sustained.


 Appellant's counsel: Instruction to disregard.


 Trial court: Disregard.


 Appellant's counsel: Move for mistrial.


 Trial court: Denied.


 The State: Our prison system is charged with all inmates. 
[Appellant will] get a break.


 Appellant's counsel: Objection outside the record what kind of
break [appellant's] going to get.

 

 Trial court: Overruled.

Appellant claims that this argument injected harmful facts that were outside of the
record and may have caused the jury to assess a more severe punishment.

 The four general areas of permissible jury arguments are (1) summation of the
evidence, (2) reasonable deductions from the evidence, (3) answers to argument of
opposing counsel, and (4) pleas for law enforcement. Albiar v. State, 739 S.W.2d
360, 362 (Tex. Crim. App. 1987); Gonzales v. State, 807 S.W.2d 830, 835 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd). An argument that does not fall within
one of these areas "is not reversible error unless, in light of the record as a whole, the
argument is extreme, manifestly improper, violative of a mandatory statute, or injects
new facts harmful to the accused into the trial proceeding." Gonzales, 807 S.W.2d
at 835 (citing McKay v. State, 707 S.W.2d 23, 26 (Tex. Crim. App. 1985)). 

 The trial court at first instructed the jury to disregard the State's reference to
the panel member's comment about whether appellant would be treated more
leniently because he was a police officer. Even if this argument, up to the time of the
court's instruction, was improper, it was not so extreme that it could not be cured by
the trial court's instruction to the jury to disregard. See McKay v. State, 707 S.W.2d
23, 26 (Tex. Crim. App. 1985). After the instruction to disregard, the trial court 
overruled appellant's objection when the State repeated the argument. However, the
State later made the same argument without objection:

 Common sense will tell you they're not going to put the Defendant in
general population. Common sense will tell you that they'll safeguard
the Defendant. Common sense will tell you he's not the only rogue cop
ever sent in to prison. 

Appellant did not object to this comment and has, therefore, waived error. See
McFarland v. State, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992) (holding that no
reversible error existed when same argument is presented elsewhere in trial without
objection), overruled on other grounds, Bingham v. State, 915 S.W.2d 9 (Tex. Crim.
App. 1994); Kelley v. State, 968 S.W.2d 395, 402-03 (Tex. App.--Houston [14th
Dist.] 1998, no pet.) (finding that right to complain of impermissible jury argument
forfeited if appellant fails to object continually). 

 Although we find error from the trial court's exclusion of Schmeler's
impeachment testimony, we hold that appellant was not harmed by this error. All of
appellant's other complaints concerned rulings that were not error or were erroneous
rulings that were either waived or cured by an instruction to disregard. Therefore,
appellant has not shown that cumulative error that deprived him of his constitutional
rights. 

 We overrule appellant's fifteenth issue.
Conclusion


 We affirm the judgment of the trial court.





 Tim Taft



 Justice


Panel consists of Justices Taft, Jennings, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).

1. A person commits retaliation if she intentionally or knowingly harms or
threatens to harm another by an unlawful act in retaliation for the service or
status of another as a public servant, witness, prospective witness, informant,
or person who has reported or intends to report the occurrence of a crime. See
Tex. Pen. Code Ann. § 36.06 (Vernon 2003).
2. Schaffer had told appellant that, after Aguillard was arrested, Schaffer had
been followed by an unidentified man with whom he had had a previous
altercation. Schaffer claimed that this man, who had pulled a gun on him on
a prior occasion, had followed Schaffer home on the night of the arrest. The
previous altercation between Schaffer and this unidentified man was unrelated
to the events of this case.