Alvin F. KELLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–96–00254–CR.

Court of Appeals of Texas,
Tyler.

Jan. 27, 1998.

Affirmed.

LaJuanda J. Lacy, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Alvin Kelley ("Appellant") was convicted of murder and assessed punishment at confinement in the Institutional Division of the Tex-as Department of Criminal Justice for sixty years. He complains on appeal that the trial court erred in submitting a jury instruction on provoking the difficulty, in entering judgment on the verdict, in admitting victim impact testimony, and in denying Appellant's motion for mistrial. We will **affirm**.

Appellant's second, third and fourth points of error deal with the sufficiency of the evidence, which we will address first. From the evidence adduced at trial, it appears that the victim, Ray Fonza ("Ray"), had been living with Appellant's mother ("Delores") for approximately six years. On the date of the charged offense, Ray allegedly threatened Delores with a gun, leading her about their yard with his shotgun under her nose and chin. She was rescued from her plight by one of Ray's daughters. Delores fled from her house and, according to her testimony, told no one about the incident. Several hours later, another of Ray's daughters ("Cheri"), her boyfriend ("Chino") and Cheri's cousin ("Randy") arrived at the Fonza residence to visit, drink and play dominoes. Delores' son, Rickey Kelley ("Rickey"), soon approached Ray's yard, where the others were sitting, and asked where his mother was. Cheri told him that Delores was not there and that he should leave. Ray also insisted that Rickey leave the premises. Ray went into the house, at which time Rickey left in a white vehicle. Ray brought out a shotgun, then returned it to the house and brought out a rifle. He put it on the card table in front of him and announced that he was ready for Rickey if he came back. Approximately fifteen minutes later, Randy asked Ray if he could use his car, to which Ray agreed. When Randy stopped at the stop sign at the end of the street, Appellant suddenly appeared at his car window and pointed a gun at him. When Appellant recognized the driver, he said, "I thought you were Ray."

Appellant continued walking to Ray's house, but had concealed his gun under his shirt. Both Cheri and Chino testified that they were not aware that Appellant had a gun in his possession when he arrived. Standing just inside Ray's yard, Appellant demanded that Ray tell his version of what

had happened earlier between Delores and him. Ray told Appellant he did not have to say anything and demanded that he leave. Appellant asked the same question several times, and Ray replied several times in the same manner. Ray then picked up his rifle and repeated his demand that Appellant leave the premises. Chino attempted to intervene, trying to convince Appellant to leave. Appellant took a step, possibly in retreat, and Ray hit him either on the shoulder or the head with the stock of his rifle, the weapon breaking upon impact. There was testimony that the rifle was of poor quality and extremely lightweight. After Ray hit Appellant with his rifle, Appellant turned and pulled his gun from under his shirt. He shot Ray either once or twice while the victim was standing, then once or twice after Ray fell to the ground. The pathologist testified that Ray suffered from three fatal gunshot wounds. He also stated that when Appellant shot Ray, the gun was more than two feet away from the victim, and that the wounds were probably not the result of a struggle.

After the shooting, Appellant picked up the stock of the gun and began to walk away from the scene. The white car which had earlier brought Rickey to Ray's house approached, Appellant boarded the vehicle and it drove away. After Appellant was apprehended, the investigating officer saw a non-bleeding bruise on Appellant's shoulder. Upon questioning, Appellant stated that he did not need medical treatment. In addition, the booking officer asked Appellant if he was injured and Appellant answered that he was not.

In his second, third and fourth points of error, Appellant complains that 1) the trial court erred in entering the jury's verdict, as the verdict was contrary to law; 2) the trial court erred in refusing to grant Appellant's motion for a directed verdict; and 3) the State's evidence was insufficient to sustain a murder conviction. These points of error call for both a legal and factual sufficiency review. The standard of review for the legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential ele-

ments of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Cr.App.1996). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr.App.1988).

In reviewing factual sufficiency of the evidence, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution' ... and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Cr.App. 1996). The standards set forth above are the same for both a direct and circumstantial evidence case, and the prosecution need not exclude every other reasonable hypothesis except the guilt of the accused. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex.Cr.App.1995); *Fields v. State*, 932 S.W.2d 97, 103 (Tex. App.—Tyler 1996, pet. ref'd).

The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Cr.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury is free to believe or disbelieve any witness. *Id.* It may resolve conflicts in the evidence, accept one version of the facts, disbelieve a party's evidence, and resolve any inconsistencies in favor of either party. *McIntosh v. State*, 855 S.W.2d 753, 763 (Tex. App.—Dallas 1993, pet. ref'd). The jurors are also entitled "to draw reasonable inferences from basic facts to ultimate facts." *Id.* The jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex.App.—Beaumont 1993, pet. ref'd). If conflicting inferences exist, we must presume the trier of fact resolved any conflict in favor of the prosecution. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Cr.App.1993). In re-

viewing the sufficiency of the evidence, the reviewing court must consider all of the evidence which the jury was permitted to consider whether rightly or wrongly. *Thomas v. State*, 753 S.W.2d 688, 695 (Tex.Cr.App. 1988).

The issues which the jury considered, and which we must now review, are intent to commit murder, self-defense, provoking the difficulty and the influence of sudden passion on the commission of the crime.[1] The following is a brief discussion of each.

 A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN. CODE ANN. § 19.02(a)(1), (2) (Vernon 1974). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PEN.CODE ANN. § 6.03(a) (Vernon 1974). Intent can be inferred from acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Cr.App.1982). The accused's intent may also be ascertained from the methods used and the wounds inflicted,[2] as well as from circumstances surrounding the use of a weapon. *Cordova v. State*, 698 S.W.2d 107, 112 (Tex.Cr.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986).

In regards to self-defense, a person is justified in using force against another person "when and to the degree" that the person "reasonably believes the force is immediately necessary" for protection against that other person's use or attempted use of unlawful force. TEX. PEN. CODE ANN. § 9.31(a) (Vernon 1974). The use of force is not justified if the actor is responding to force that he himself provoked, unless the actor abandons the encounter and the other nevertheless continues or attempts to use unlawful force against the actor. TEX. PEN. CODE ANN. § 9.31(b)(4) (Vernon 1974). The Penal Code justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used. The amount of force used must be in proportion to the force encountered. Special rules govern the use of deadly force in self-defense. Deadly force means force that is intended or known by the actor to cause death or serious bodily injury, or force that is capable of causing death or serious bodily injury in the manner of its use or intended use. TEX. PEN. CODE ANN. § 9.01(3) (Vernon 1974). A person is entitled to use deadly force in self-defense against another only if all three of the following conditions are met:

(1) if he would be justified in using [non-deadly] force against the other under Section 9.31 of this [Penal] code;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of ... murder....

TEX. PEN.CODE ANN. § 9.32(a) (Vernon 1983). Deadly force is not immediately necessary if a reasonable person in the position of the defendant would use some available nondeadly method of self-defense. In such circumstances, a defendant's use of deadly force would not be justified. *See* TEX. PEN.CODE ANN. § 9.32(a)(3) (Vernon 1983).

 The defendant has the initial burden of producing some evidence to justify submission of a self-defense instruction. The State must then persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Cr.App. 1991). Although the State has the burden of persuasion, it does not have the burden

---

1. The jury was charged on, but rejected, the contention that Appellant committed voluntary manslaughter, which requires a finding that he killed under the influence of sudden passion.

2. *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Cr. App.1981).

of producing evidence to affirmatively refute self-defense. *Id.*

A "provoking the difficulty" instruction places the defendant in the wrong and limits his right of self-defense. *Williamson v. State,* 672 S.W.2d 484, 485 (Tex.Cr.App. 1984). The jury may find that the defendant had no right to defend himself when there is evidence that the deceased made the first assault on the defendant because the defendant, in order to have a pretext for killing or inflicting bodily injury upon the deceased, did some act or used some words intended to and calculated to bring on the difficulty. *Id.* at 486.

Voluntary manslaughter, a second-degree felony, is an act that would constitute murder under TEX. PEN.CODE ANN. § 19.02 (Vernon 1974) except that the person caused the death under the immediate influence of sudden passion arising from an adequate cause. Former TEX. PEN.CODE ANN. § 19.04(a), (d) (Vernon 1974). Sudden passion is a passion directly caused by and arising out of provocation by the individual killed or by another person acting with the person killed. Former TEX. PEN.CODE ANN. § 19.04(b) (Vernon 1974). The passion must arise at the time of the offense and not occur solely as the result of former provocation. Former TEX. PEN. CODE ANN. § 19.04(b) (Vernon 1974). Adequate cause is a cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Former TEX. PEN.CODE ANN. § 19.04(c) (Vernon 1974); *McBride v. State,* 862 S.W.2d 600, 606 (Tex.Cr.App.1993).

Under the law at the time of the killing, sudden passion, or the lack thereof, constituted an implied element of the offense of murder. *Johnson v. State,* 815 S.W.2d 707, 710 (Tex.Cr.App.1991). Once raised by the evidence, the State had the burden to disprove, beyond reasonable doubt, its presence. *Id.* at 710–11. There were various bases upon which a properly instructed jury could reject sudden passion, though the issue was undoubtedly raised by the evidence. If the jury found there was no provocative conduct, or at least none occurring at the time of the offense, then there was no finding of cause at all, much less 'adequate cause.' Alternatively, the jury could have found that there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but that nonetheless, the defendant himself acted coolly and deliberately. Finally, it could have found that there was provocative conduct, that the defendant was in fact provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection. *See Gold v. State,* 736 S.W.2d 685, 699 (Tex.Cr.App.1987), *overruled on other grounds, Torres v. State,* 785 S.W.2d 824 (Tex.Cr.App.1989). *See Bryant v. State,* 482 S.W.2d 270, 271–72 (Tex. Cr.App.1972)(no evidence of rage or terror when defendant shot victim to prevent victim from obtaining weapon and shooting him); *see also Jones v. State,* 687 S.W.2d 425, 428 (Tex.App.—Dallas 1985, pet. ref'd)(conscious awareness of danger does not establish fear necessary for voluntary manslaughter).

After carefully reviewing the record as outlined above, we are persuaded the jury could have reasonably concluded that Appellant intended to shoot the victim, that self-defense was negated by Appellant's use of excessive force or by his provocation of the difficulty, and that he did not kill under the influence of sudden passion arising from adequate cause. There is sufficient evidence to support these conclusions. Appellant brought a gun, which is considered a deadly weapon, to Ray's residence. When he mistook Randy for Ray because Randy was driving the victim's vehicle, Appellant pointed the gun at him without provocation. Appellant presumably already knew that Ray had earlier threatened Delores, since he came to Ray's house demanding an explanation for the assault. Appellant stood in Ray's yard and unremittingly asked him what happened between his mother and him, even though Ray repeatedly warned him to leave and threatened him with his rifle. When Ray hit him with an admittedly flimsy and lightweight rifle, the gun broke, rendering it incapable of firing. Appellant was only slightly injured by the blow. Instead of retreating from this nondeadly force, Appellant pulled his gun from under his shirt and shot the

unarmed Ray either once or twice while the victim was standing. After Ray fell to the ground, posing no threat to him, Appellant continued shooting the victim. Appellant did nothing to help Ray after wounding him; instead, he calmly picked up the stock of the rifle and drove away. We find that this evidence is both legally and factually sufficient to support the verdict of the jury. Points of error two, three and four are overruled.

◼◼◼ In point of error one, Appellant complains that the trial court erred in submitting a jury instruction on provoking the difficulty. A "provocation" instruction is used to inform the jury that the defendant forfeits his right of self-defense if the defendant provoked the difficulty in order to have a pretext to kill or injure the victim. *Lee v. State*, 903 S.W.2d 845, 848 (Tex.App.—Beaumont 1995, pet. ref'd). A charge on provoking the difficulty is warranted only if: (1) self-defense is an issue; (2) the victim made the initial attack on the defendant; and (3) the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for injuring the victim. *Matthews v. State*, 708 S.W.2d 835, 837–38 (Tex.Cr.App.1986). A defendant will not be held to have provoked a victim's attack unless the defendant both intended to provoke the very difficulty in question and actually said or did something particular that caused the victim to attack. *Semaire v. State*, 612 S.W.2d 528, 531 (Tex. Cr.App.1980).

In the instant case, all three of the above-stated elements were present. There was some evidence that Appellant shot Ray in self-defense. And it was undisputed that Ray made the initial attack on Appellant. Furthermore, Appellant came to Ray's house with a gun, presumably angry about Ray's mistreatment of his mother, and stood in Ray's yard arguing with him. Ray, on several occasions, told Appellant to leave his property. Although Ray threatened Appellant with a rifle, Appellant continued to argue with Ray and refused to leave. This was some evidence that Appellant acted with the intention of bringing on the difficulty in order to have a pretext for injuring the victim.

Consequently, an instruction on provoking the difficulty was appropriate in this case. We overrule point of error one.

In point of error five, Appellant complains on several different levels that the trial court erred when it allowed the State to introduce Cheri's victim-impact testimony at the punishment phase. Appellant argues that since the State did not comply with his discovery request, Cheri's testimony should have been excluded. In reviewing Appellant's Motion for Discovery and Inspection of Evidence, we note that Appellant requested the names, addresses and telephone numbers of the witnesses that the State reasonably anticipated it would call in its case-in-chief, rebuttal, and punishment phase. Appellant maintains that the State listed Cheri as a fact witness, but not as a witness at the punishment phase of the trial. He also asserts that the State should have provided him with Cheri's victim-impact statement before trial. The State's discovery responses are absent from the record, however, so we have nothing to review on this issue. Former TEX. R. APP. P. 50(d); *see also Garcia v. State*, 901 S.W.2d 724, 729 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd)(appellant waived error regarding the admission of a videotape when the videotape was not made part of the record).

◼◼◼ Appellant also argues that Cheri's victim-impact testimony was irrelevant, and thus inadmissible, at the punishment phase. We disagree. Evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1989). Questions of relevance should be left largely to the trial court, and will not be reversed absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Cr.App.1993), *cert. denied*, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993) and 511 U.S. 1012, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994). In reviewing a trial court's relevancy decision via the abuse of discretion standard, as long as the trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1990)(op. on reh'g). In

the instant case, Cheri testified concerning the effect of her father's death upon herself. She stated that she had difficulty sleeping and eating after the shooting death of Ray, that it was difficult for her to function, and that she missed the get-togethers with her father and other family members. We hold that this evidence had some bearing on Appellant's personal responsibility and his moral guilt, and thus relevant to punishment issues. We cannot say, therefore, that the trial court's decision to admit the evidence was not at least within the zone of reasonable disagreement. Furthermore, we recognize that this type of testimony is permissible under the U.S. Supreme Court's holding in *Payne v. Tennessee*, 501 U.S. 808, 826, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 736 (1991)(in regards to victim impact evidence, there is nothing unfair about allowing the jury to bear in mind the harm caused by the defendant at the same time it considers the mitigating evidence introduced by the defendant).

■ In his sixth and last point of error, Appellant contends that the trial court erred when it refused to grant a mistrial after impermissible jury argument pertaining to the law of parole. The court charged the jury concerning the possibility that Appellant might be awarded good conduct time or that the length of Appellant's imprisonment might be reduced by parole. The charge went on to state the following:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

The complained-of argument was as follows:

> Let me talk to you a little bit about the charge of the case as we try to evaluate what the appropriate sentence is. You got a parole charge here on page 3 and you're asked at the conclusion of reading the parole charge not to apply it to the particular Defendant. And the reason for that is very clear. What this tells you is a defen-

dant can earn good time. A defendant can earn good time, if they are in the penitentiary. They can earn time off of their sentence for good behavior. If they don't engage in good behavior, then perhaps they don't get time off. What it tells you is, it says for an individual convicted of murder with a deadly weapon, as you've convicted him, they will not become eligible until the actual time served equals one forth[sic] or 15 years, whichever is less, whichever is less. *So you can clearly see that if you sentence the Defendant to this long penitentiary time, whatever it is, there will be—there will be an opportunity for him to reduce that sentence, to reduce that sentence down to as low as a quarter of what you give him or 15 years, whichever—* (emphasis ours)

Appellant timely objected to the jury argument and the trial court sustained the objection and instructed the jury to "please refer to the instructions within the charge as to any parole provisions." Appellant did not request an instruction to disregard, but did ask for a mistrial, which the trial court denied. The prosecutor then continued his jury argument as follows:

> What the law says, what the charge says, specifically, it cannot accurately be predicted how the parole law and good conduct time might be applied to this Defendant if he is sentenced to a term of imprisonment, because application of these laws will depend on decisions made [by] the prison and parole authorities. In other words, as to good conduct, whether he gets it, whether he doesn't, we can't sit here today and tell you whether he will get good conduct time or whether he will not get good conduct time. They may change something in the law at the penitentiary, the law of Board of Pardons and Parole. We can tell you what the law is now and that's what Judge DeVasto has done in this charge and that's what I'm referring to. *The point being, whatever the situation, he'll have the opportunity to reduce his sentence to some degree. As the law stands now, a quarter or 15 years, whichever is less. The point I'm making to you is what you're not doing, what you're not doing, in assessing a long sentence, is putting him in the*

*penitentiary for the rest of his natural life, period. You're not doing that.* You're assessing a strong sentence that sends a strong message in this community about this type of crime. And he will have an opportunity to earn good conduct time, if he wants to, and if the authorities will give it to him. That's all I mean by this argument. And that's why its put in this charge, so that you can consider that. (emphasis ours)

■■ In general, the approved areas of jury argument are summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and a plea for law enforcement. *Shannon v. State,* 942 S.W.2d 591, 597 (Tex. Cr.App.1996). The arguments of the prosecutor in the case at bar cannot be said to fall within any of the permissible areas. In *Valencia v. State,* 946 S.W.2d 81, 82 (Tex.Cr. App.1997), the Court of Criminal Appeals held that it was error when the prosecutor argued "that under the charge given someone with a forty-year sentence could be released on parole in two years …," even though he had first cautioned the jury that they could not "guess or estimate anything about good conduct time or parole to this guy." In *Valencia* and in the instant case, the prosecutors were impliedly urging the jury to do what the court directed it not to do—consider how the good time conduct and parole laws might affect Appellant's actual time served when determining punishment.

■■ Although this jury argument constituted error, a defendant's "right" not to be subjected to erroneous jury argument is one of those rights that is forfeited by a failure to insist upon it. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Cr.App.1996). We hold, therefore, that Appellant's failure to request an instruction to disregard after the first impermissible argument, and his total failure to object to the prosecutor's continuation of the argument, forfeits Appellant's right to complain about the argument on appeal. We overrule point of error six and *affirm* the judgment of the trial court.