# NO. 12-17-00348-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JARED EUGENE WILSON, APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jared Eugene Wilson appeals from his conviction for murder. In one issue, he challenges the sufficiency of the evidence to support his conviction. We affirm.

### BACKGROUND

The State charged Appellant with the murder of Tommy Wilson by shooting Tommy with a firearm. Appellant pleaded "not guilty."

At trial, the record demonstrated that the shooting occurred at the Royal Inn and Suites. Amanda Hall testified that, on July 4, 2016, Appellant allowed Hall and her children to stay in his motel room. Hall owned a firearm, which she placed in the nightstand drawer. She also drove a Nissan. The next morning, her Nissan and firearm were missing.

Charlotte Harley testified that her daughter, Tabitha, was dating Tommy at the time of the offense and that her daughter, Rachel Woods, was dating Appellant. On July 5, Harley drove Woods to the Royal Inn to get Woods's Dodge that Appellant had been driving. The record indicates that Appellant co-signed for the Dodge. After Harley left the Royal Inn, Woods called her because Appellant was threatening to throw a brick through the Dodge and would not return the car keys. Woods confirmed that she and Appellant got into an argument after Harley dropped her off and she contacted Harley.

Harley returned to the Royal Inn, parked behind the Dodge, and then sat inside the Dodge. Woods testified that she asked Harley to sit in the Dodge because Appellant had the car keys and she did not want Appellant to "take off with the car." Woods then left in Harley's vehicle to get Tommy in hopes he could help retrieve her belongings from Appellant. Woods also described a prior altercation between Tommy and Appellant when Tommy grabbed Appellant by the throat and threw him to the ground. Woods testified that, on July 5, Appellant knew she left the Royal Inn to get Tommy and she was gone about twenty minutes.

When Woods returned to the Royal Inn with Tommy, Harley saw Woods and Tommy walk toward Appellant. She did not see Tommy displaying any weapons, holding a knife, or threatening to hurt anyone, but she was not close enough to see if Tommy had any knives on his person. Woods testified that Tommy had a knife in his hand when he exited the car and he began chasing Appellant with the knife. At some point, Appellant encountered Woods and turned the other direction. Woods admitted feeling concerned because Appellant kept reaching toward the front of his pants, which he was not doing when she left the Royal Inn to retrieve Tommy, and she feared he might have a gun.

Reginald Johnson testified that he saw Appellant running and Tommy walking fast behind Appellant. Tommy was using profanity and asking Appellant why he was running. Johnson heard Appellant tell Tommy, "Go on. Go on." Johnson did not witness the shooting, but Woods testified that Appellant ran towards Tommy before the shooting.

Based on surveillance footage Detective Gregg Roberts with the Tyler Police Department testified that Appellant caused Tommy's death by shooting him with a firearm, and then left the scene. Sergeant Destry Walsworth, also with the Tyler Police Department, testified that the footage showed Tommy attempting to close the gap between himself and Appellant when Appellant presented the firearm. He explained that Tommy's actions are consistent with someone having a background in defensive tactics and that the footage did not reveal that Tommy had anything in his hands.[1] Detective Roberts testified that surveillance showed that Tommy had no weapons in his hands and did not pose any immediate threat to Appellant's safety or welfare. Crime scene investigator Craig Williams with the Tyler Police Department testified that three knives were collected from Tommy's body. One knife was in its sheath and the other two were closed.

---

[1] The record indicates that Tommy was retired military.

Hall testified that, after the shooting, Appellant called and told her to get out of the room. She testified that she never saw Appellant take her firearm from the nightstand and did not know when he took the keys to her Nissan. Walmart surveillance video shows that, after the shooting, Appellant parked in Hall's Nissan, entered the store, purchased clothes and other items, entered the restroom, and exited the restroom wearing the clothes he just purchased. Texas State Trooper Lynn Hubert subsequently located the Nissan. He testified that he was driving one direction and passed Appellant going the opposite direction, but when he turned his patrol vehicle around, Appellant pulled over and was cooperative. Woods testified that she spoke with Appellant during his subsequent incarceration and he apologized for shooting Tommy.

During his search of the Nissan, crime scene investigator Donald Malmstrom with the Tyler Police Department discovered a firearm that contained two live rounds. He testified that four spent shell casings were found at the scene of the offense. Forensic scientist Kelly Clark testified that the four cartridge cases found at the scene, and the bullet retrieved from Tommy's body, were fired from the firearm found in the Nissan. Dr. Emily Ogden, the medical examiner, testified that Tommy suffered from a gunshot wound of the neck into the chest.

At the conclusion of trial, the jury found Appellant "guilty" of murder, found he used a deadly weapon during commission of the offense, found that Appellant did not cause Tommy's death under the immediate influence of sudden passion arising from adequate cause, and assessed a punishment of imprisonment for life. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is legally insufficient to support the jury's rejection of self-defense. According to Appellant, Tommy was the aggressor and sought an altercation with Appellant to deprive Appellant of his vehicle. He maintains that the evidence is legally insufficient to show that he acted in any way other than in self-defense.

### Standard of Review and Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The issue of self-defense is a fact issue to be determined by the jury. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we

3

examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id*. at 914.

As pertinent to the present case, a person commits murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (West 2011). A person acts in self-defense in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself from the other's use or attempted use of unlawful force. *Id*. § 9.31(a) (West 2011). A "reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42) (West Supp. 2017). The justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used. *Kelley v. State*, 968 S.W.2d 395, 399 (Tex. App.—Tyler 1998, no pet.). The amount of force used must be in proportion to the force encountered. *Id*. The use of deadly force is justified if the use of force is justified under Section 9.31 and the actor reasonably believes deadly force is immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(1), (2)(A) (West 2011).

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces such evidence, the state bears the burden of persuasion to "disprove the raised defense." *Id*. The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Id*. Moreover, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province[,] and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914. When the evidence is conflicting, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

4

**Analysis**

Appellant argues that he had a right to be at the Royal Inn because he resided there, that Tommy's intent was to use physical force or the threat of physical force to take the Dodge, and that the record contains evidence showing that Tommy exited Harley's vehicle and began chasing Appellant with a knife. According to Appellant, "[t]hat Tommy, was the primary aggressor, and that he sought out an altercation with [Appellant] to deprive [Appellant] of his vehicle, is the only reasonable deduction from the record before the Court."

The jury heard conflicting evidence regarding whether Tommy had a knife in his hand as he pursued Appellant. The jury also heard Woods's testimony of a prior altercation in which Tommy grabbed Appellant by the throat. Nevertheless, the jury further heard evidence that Appellant knew Woods left the Royal Inn to get Tommy, Hall's firearm went missing, and when Woods returned to the Royal Inn with Tommy, she noticed Appellant reaching toward his pants and was concerned he had a gun. Additionally, the jury had the opportunity to review surveillance footage from the shooting. That footage shows Tommy pursuing Appellant at a brisk walk, but not running after Appellant, and does not reflect a weapon in Tommy's hand. Significantly, two of the knives found on Tommy's body were closed and the third was still in its sheath. The footage further shows Appellant approaching Tommy and shooting him. The jury was entitled to determine whether the evidence showed Appellant being forced to "stand his ground and defend himself," as Appellant contends, or showed otherwise. *See **Brooks v. State***, 323 S.W.3d 893, 899–90 (Tex. Crim. App. 2010); ***Clayton***, 235 S.W.3d at 778; *see also **Saxton***, 804 S.W.2d at 914. Moreover, the jury heard evidence that, instead of attempting to render aid or call for help, Appellant called Hall to warn her to leave the Royal Inn, fled the scene, and went to Walmart to purchase a change of clothes. When determining Appellant's intent, the jury was entitled to consider these actions, as intent can be inferred from an appellant's conduct before, during, and after the offense. *See **Cary v. State***, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016); *see also **Clayton***, 235 S.W.3d at 780 ("a factfinder may draw an inference of guilt from the circumstance of flight").

As sole judge of the weight and credibility of the evidence, the jury was entitled to choose which evidence to believe and, in doing so, could resolve any inconsistencies either for or against Appellant. *See **Clayton***, 235 S.W.3d at 778; *see also **Saxton***, 804 S.W.2d at 914. Based on the testimony presented, the jury could reasonably conclude that Appellant intended to shoot Tommy

and did not shoot Tommy under the influence of sudden passion arising from adequate cause. Accordingly, the jury was entitled to reject Appellant's contention of self-defense and could reasonably conclude that Appellant shot Tommy when such force was not immediately necessary to protect himself from Tommy. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found against Appellant on his self-defense claim beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Because the evidence is sufficient to support the jury's rejection of Appellant's self-defense claim, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's only issue, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 19, 2018**

**NO. 12-17-00348-CR**

**JARED EUGENE WILSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1325-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*