

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00089-CR

_____

DEVOLH DWAYNE SCALES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-17-26194

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Devolh Dwayne Scales had been placed on deferred adjudication for the offense of assault causing family violence by impeding the breathing or circulation of one with whom the defendant is or has been in a dating relationship.[1] After Scales was involved in a subsequent physical altercation, his guilt on the earlier charge was adjudicated, his community supervision was revoked, and he was sentenced to ten years' imprisonment. Scales appeals. Because we find that (1) sufficient evidence supported Scales's adjudication and that (2) Scales did not preserve his claim that the trial court improperly made inferences from the conduct of his counsel, we overrule Scales's points of error and affirm the trial court's judgment and sentence.

## (1)    Sufficient Evidence Supported Scales's Adjudication

In his main point of error, Scales combines various arguments couched in various terms, including burden of proof, due process, and conclusive proof, but they all challenge, in one way or another, the sufficiency of the evidence to support the trial court's adjudication of Scales's guilt. That requires us to consider the evidence in this record.

After receiving deferred adjudication, Scales was arrested in late 2019 in Lamar County for a new allegation of a similar offense, assault by impeding the victim's breathing or circulation and by striking the victim in the face.[2] That arrest was followed by this case's motion to adjudicate, alleging that Scales "intentionally and knowingly caused bodily injury to Tanisha

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (Supp.).

[2]The motion to adjudicate did not allege Scales was in a dating relationship with Tanisha Bass, but the evidence showed they were a couple and had an infant child together. The trial court's findings of fact found Bass and Scales were a couple, and the trial court treated the Paris offense as of "the same nature" as that for which Scales was placed on community supervision. Scales does not complain of this, and it has no effect on the range of punishment.

Bass by striking her in the face with his fist and impeding her breath to the point where . . . Bass lost consciousness" and that this conduct violated the term/condition of Scales's community supervision that prevented him from committing any offense against the laws of the State of Texas.

The trial court heard the State's motion to adjudicate on February 2, 2020, and concluded the hearing June 22, 2020.

Bass testified that she and Scales had been dating about a year when the assault occurred and that they had one child, a small infant, at the time. On December 11, 2019, Scales came to Bass's home in Paris about 8:00 p.m. Later in the evening, Scales was upstairs while Bass was cleaning downstairs. When the infant became fussy, Bass took the child upstairs to bathe him. Upstairs, Bass found Scales "laid across the bed on the phone." Wanting help with the baby and housework, Bass asked Scales if he was there "to chill or to help." That upset Scales, who got "[m]ad and loud," as Bass described it. The couple argued, and Bass asked Scales to leave the residence. Scales refused and became "pretty aggressive," in Bass's words. Their arguing escalated, and Bass felt threatened by Scales. She had seen him behave like that before, she said. She twice went through the initial motions of dialing police, trying to get Scales to leave, but never let it ring through to the 9-1-1 operator. She later actually called a mutual friend for help getting him to leave, but it had no effect.

Bass went on to bathe the baby. After she had diapered the baby for bed, Scales took the child and announced that he would care for the baby. At that point, Bass announced her intent to call the police to ask them to come to the home. Scales laid the baby down and grabbed Bass by

3

the neck with both his hands. Bass said Scales pressed his thumbs over her windpipe, causing her great pain and causing her to lose consciousness.

Bass said she roused around 10:20 p.m. on the downstairs couch, holding the baby. She said that she felt "dazed" and "knew that [she] had been choked," but could not remember coming down the stairs. She could not see out of her right eye and had blood on her white shirt. She told her eight-year-old daughter to call 9-1-1. Paramedics arrived and took Bass to the hospital, where she was kept two nights.

Two Paris police officers testified for the State. Officers Stetson Henderson and Dylon Rushin[3] described what they saw at the scene. Both officers described Scales as "calm" on their arrival. Scales told the officers that he had been struck by Bass and that he had hit her in response. Rushin said Scales was not agitated, out of breath, exerted, scared, or upset. Henderson testified that Bass "opened the door frantically and just didn't know what was going on." Henderson described Bass as "very frantic, kind of extremely disoriented . . . covered in blood." Both officers said that the downstairs of the townhouse seemed undisturbed but that the upstairs showed signs of a disturbance. "Things were kind of tossed around," and blood was visible in the bathroom, on the couch downstairs, and on Bass's purse.

Rushin said that "[t]he whole right side of [Bass's] face was severely swollen, and she had a cut . . . she was very confused as to what just happened." She had blood on her shirt. Henderson described Bass as "[s]ever[e]ly beaten" and stated that she had "very large knots,

---

[3]In a hearing on the trial court's findings of fact and conclusions of law, there is some discussion that the officer's name might be Rushing. However, Rushin was used throughout the reporter's volume covering the officer's testimony and in the court's findings of fact and conclusions of law. Hence, we use the name Rushin.

swelling on her forehead," an eye swollen shut "and blackened severely," a "laceration or some kind of cut on her cheek, and general swelling on her face." Several photographs of Bass were admitted into evidence, corroborating Henderson's descriptions of her. Rushin testified that, while Scales claimed Bass had hit him on the back of his head, Rushin could not see any injury to Scales's head in the poor lighting outside. Rushin also testified that he observed a scratch on Scales's hand but did not see anything like defensive wounds.

After Rushin booked Scales into the Lamar County Jail, Scales offered Rushin "an audio recording of the entire incident." Rushin's supervisor advised that Scales "get in contact with the detectives so they can download it 'cause it was too long to email." Rushin did not know whether Scales ever contacted a detective. Scales gave Rushin the recording, and Rushin listened to it.[4] Under cross-examination, Rushin agreed he had "heard the entire incident" on the recording Scales gave him and that he could hear "her punching him" "[m]ultiple times" before Scales did anything. Rushin further testified that "the actual physical altercation took place upstairs from what [they] could tell." Rushin agreed with defense counsel that Scales admitted hitting Bass more than once but that Scales claimed she attacked him first. Rushin heard no choking "that [he] could tell" and saw no signs of choke marks on Bass's neck.

On re-direct examination, the State asked Rushin, "What does choking sound like?" Rushin answered that he had "never heard anybody actually being choked" and agreed with the State that "[b]y definition, choking means you're restricting the air flow from the windpipe" and it would be "[k]ind of hard to make a sound in that case." The State then asked Rushin,

---

[4]Rushin also testified that he listened to the recording just before giving his testimony, but that the recording was always in Scales's possession.

5

[State's Attorney]: And how do you know for sure that the sounds you heard on this audio that you heard are [Bass] punching [Scales] as opposed to [Scales] punching [Bass]?

[Rushin]: I don't know 100 percent that --

[State's Attorney]: It sounds like . . . somebody's hitting somebody, right?

[Rushin]: Yes, sir.

[State's Attorney]: But we're not sure who?

. . . .

[Rushin]  Yes, sir.

In his case-in-chief, Scales presented testimony from Dr. Riaz Tadia, a board-certified neurologist. Tadia testified that he had examined Scales, who reported experiencing memory difficulties, having headaches, and experiencing "trances," which would end after a few minutes. Tadia diagnosed Scales as having a possible cognitive problem that could have been caused by a concussion, which in turn could have been caused by someone attacking Scales. Tadia testified that Scales seemed to be responding well to medicines he had prescribed. "Appellate review of an order revoking [community supervision] is limited to abuse of the trial court's discretion." *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). "In determining questions regarding sufficiency of the evidence in [community supervision] revocation cases, the burden of proof is by a preponderance of the evidence." *Id.* "The trial court, as the trier of facts, is the sole judge of the credibility of the witnesses and weight to be given their testimony, and may accept or reject all or any part of the witnesses' testimony." *Casey v. State*, 519 S.W.2d 859, 861 (Tex. Crim. App. 1975).

6

A defendant arguing self-defense has the burden to produce some evidence supporting that defense, and "the State then bears the burden of persuasion to disprove the raised defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). In a revocation proceeding, the State's burden of persuasion countering the defense's theory of self-defense is by a preponderance of the evidence. *See Simpson v. State*, 591 S.W.3d 571, 578 (Tex. Crim. App. 2020) (Keller, J., concurring); *see also* 43A GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 48.69 (3d ed. 2011) ("Thus, a claim of self-defense . . . should be recognized as a defense in a revocation proceeding. The sole difference should be that the burden on the State respecting exceptions and defenses should be a preponderance of the evidence, as required for each element of the offense in a revocation proceeding, rather than beyond a reasonable doubt." (footnotes omitted)).

As referenced above, this record contains believable evidence supporting both the State's position and Scales's position. Thus, the evidence is sufficient to support the revocation.

Within this same point of error, Scales goes to significant lengths to argue various other matters, all of which, as we understand them, address the evidence and the fact-finder's work in sorting through it.

For example, Scales claims he conclusively proved self-defense. We disagree. For self-defense, "[t]he amount of force used must be in proportion to the force encountered." *Hines v. State*, 570 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Kelley v. State*, 968 S.W.2d 395, 399 (Tex. App.—Tyler 1998, no pet.)). Scales stakes this claim on the cross-examination testimony Scales elicited from Rushin, but photographic evidence in the

7

record shows Bass was substantially injured, resulting in her spending two nights in a hospital. While contrasting evidence revealed some possible injury to Scales, there appeared to be no clear physical injuries to Scales, except a scratch on one hand.

As for Rushin's testimony about what he heard on the audio recording provided to him by Scales—but never offered into evidence—the court could weigh Rushin's testimony against other evidence, such as Bass's testimony and the photographic evidence of her injuries. The record supports the trial court's findings of fact and conclusions of law, as well as its decision to revoke Scales's community supervision and adjudicate guilt. "Although the parties may disagree about the logical inferences that flow from undisputed facts, '[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'" *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

Scales raised the issue of self-defense in his cross-examination of Rushin. The State then bore the burden of persuasion to convince the trial court by a preponderance of the evidence that Scales committed the offense alleged in the motion to adjudicate. A finding of guilt, or in this case a finding of true, is an implicit rejection of a defendant's theory of self-defense. *See Zuliani*, 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Scales did not conclusively show he acted in self-defense when he assaulted Bass.

Scales also argues that the trial court ignored Bass's credibility problems. Scales's briefing selectively points to elements in the record where Bass's testimony is contrasted with testimony of Rushin about what he heard from the audio recording. The trial court does not err

8

in believing one witness over another. The court was the "sole trier of the facts." *Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980).

Scales also complains that the record does not support some of the trial court's findings of fact. First, he claims "the record is abundantly clear" that Scales offered the audio recording to Rushin on the night of his arrest. At no point did Scales make any attempt to play the recording for the trial court or to get the recording into evidence. We reject Scales's argument that by letting Rushin listen to the recording outside of trial, Scales offered it for admission in the trial court.

Scales also complains of the trial court's findings, such as "somewhat conflicting testimony" by Rushin, questions of who was choking and hitting whom, and whether Rushin heard the entire audio recording or the entire altercation. The trial court was best positioned to evaluate the credibility of the witnesses and their testimony. Scales's brief does not explain how those matters are not just a conflict in testimony for the trial court's resolution. We defer to that court's resolution of conflicts in testimony and find that the court's finding of facts are supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

We overrule Scales's various arguments and sub-arguments in this point of error.

*(2)     Scales Did Not Preserve His Claim that the Trial Court Improperly Made Inferences from the Conduct of His Counsel*

Scales also asserts that the trial court "made improper inferences from the conduct of [defense] counsel" in violation of Scales's due process and confrontation rights. In support, he directs us to comments by the trial court relative to the contents of the court's pending findings of fact and conclusions of law.

9

We find no place in the trial record where Scales raised any alleged violations of his due process or confrontation rights. To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). "Even constitutional errors may be waived by failure to object at trial." *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *see Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (defendant failed to preserve Confrontation Clause complaint for appellate review when trial objection was solely on hearsay grounds); *Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) (defendant's evidentiary objections did not preserve error relating to alleged violations of rights to due process and fair trial). Since this argument was not preserved, we will not consider it.

The trial court's judgment and sentence are affirmed.



Josh R. Morriss, III
Chief Justice

Date Submitted:    April 21, 2021
Date Decided:      July 15, 2021

Do Not Publish